STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1284

JONATHAN GUILLORY, ET AL.

VERSUS

PROGRESSIVE INS. CO., ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-1743
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, Billy Howard Ezell, James T. Genovese, and Shannon J. Gremillion, Judges.


AFFIRMED IN PART; REVERSED IN PART.


Gremillion, J., dissents and assigns written reasons.


Robert Irwin Siegel
Brendan P. Doherty
Gieger, LaBorde & Laperouse
701 Poydras St., 48th flr
New Orleans, LA 70139
(504) 561-0400
COUNSEL FOR DEFENDANT/APPELLANT:
      American Home Assurance Co.

**David Perry Salley**
**Salley, Hite, Mercer & Resor**
**365 Canal Street, Ste 1710**
**New Orleans, LA 70130**
**(504) 566-8800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Arthur J. Gallagher**

**Richard Elliott Wilson**
**Cox, Cox & Filo**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Jonathan Guillory**

**J. Lee Hofoss, Jr.**
**Claude P. Devall**
**Donald W. McKnight**
**Newman, Hoffoss & Devall**
**1830 Hodges St.**
**Lake Charles, LA 70601**
**(337) 439-5788**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Jonathan Guillory**

**SAUNDERS, Judge.**

American Home Assurance Co. ("American Home") appeals the judgment in favor of plaintiffs/appellees, Jonathan Guillory ("Guillory"), individually and on behalf of his minor children, Jonathan Guillory, Jr. and Sydnee Guillory, and Dana Guillory ("Mrs. Guillory"), his wife, in the amount of $671,571.00. For the reasons that follow, we affirm in part and reverse in part.

## FACTS

Guillory was employed by Cox Communications, Inc. ("Cox"). On November 30, 2005, he was driving a vehicle owned by Cox and insured by American Home, when he was struck from behind by a vehicle driven by Yvette Clark. Because Clark had a minimum-limits policy, Guillory demanded that American Home pay him uninsured motorist (UM) benefits under the policy. American Home argued that Cox, through its authorized agent, Shelia Clinton, had rejected UM coverage by virtue of a waiver form executed on December 31, 2002. The American Home policy was renewed in 2004 and 2005, and with both renewals Cox signed new rejection forms.[1] Both American Home and the Guillorys filed motions for summary judgment on the issue of the validity of the waivers executed by Cox. The trial court granted the Guillorys' motion, and American Home appealed. We heard American Home's appeal and reversed the Guillorys' summary judgment. *Guillory v. Progressive Sec. Ins. Co.*, 09-1056, 09-1508 (La.App. 3 Cir. 10/6/10), 47 So.3d 12, *writ denied*, 10-2519 (La. 12/17/10), 51 So.3d 7, and *writ denied*, 10-2419 (La. 12/17/10), 51 So.3d 11. We found that a genuine issue of material fact existed because, while it was disputed that the policy number was not on the form at the time it was executed, the waiver could

---

[1] The policy number changed every year. The 2003 policy bore number RMCA 534 96 89. The 2004 policy was numbered RMCA 518 86 91, and the 2005 policy was numbered RMCA 204 49 90.

nonetheless be valid if no policy number was available at the time of execution. *See Carter v. State Farm Mut. Auto. Ins. Co.*, 07-1294 (La. 10/5/07), 964 So.2d 375. We found that a genuine issue of material fact existed over whether a policy number was available at the time the waiver was signed. Neither party had submitted evidence on that point to support or oppose their motions.

After our reversal of the Guillorys' summary judgment, the Guillorys and American Home filed new motions for summary judgment. According to the briefs and court minutes, the trial court found that the 2005 transaction was not a renewal but rather the issuance of a new policy. Accordingly, because the rejection was invalid, UM benefits for the full amount of liability coverage, $2,000,000.00, was provided under the policy. American Home sought writs of review from this court, which denied same on the grounds that it had an adequate remedy on appeal. *Guillory v. Progressive Ins. Co.*, 11-1100 (La.App. 3 Cir. 9/9/11), (unpublished). At the hearing, the trial court found that it could not accept the assertions of the affiant, Ms. Linda Smith, who recalled typing the policy number onto the 2002 waiver. Because Cox submitted an annual review or application to American Home, the trial court found the 2005 renewal to be a new insurance contract requiring a new waiver. Because the 2005 waiver was invalid due to the omission of the policy number, the trial court found that the policy afforded UM benefits equal to the liability limits.

The litigation ran its course and was tried before a jury on September 12–15, 2011. The jury returned a verdict in favor of Jonathan Guillory, individually in the amount of $310,000.00 and on behalf of his minor children in the amount of $40,000.00, against American Home. The demands of Dana Guillory were dismissed with prejudice. Thereafter, on October 3, 2011, the parties entered into a "High-Low Agreement" by which Jonathan Guillory was paid $200,000.00, in

2

exchange for which he agreed that regardless of the outcome of any post-trial motions he would receive no more than an additional $400,000.00.

Post-trial motions in the form of Motions for Judgment Notwithstanding the Verdict ("JNOV") were filed by the Guillorys and American Home. The trial court heard that motion on December 6, 2011, and granted the Guillorys' motion, increasing the award in favor of Jonathan Guillory to $671,571.36, and also awarding Dana Guillory $25,000.00 in damages for loss of consortium. American Home's motion for JNOV was denied. Judgment on the JNOV was signed on January 14, 2012. American Home then perfected its appeal.

## ASSIGNMENTS OF ERROR

American Home argues that the trial court erred in finding that the 2002 waiver was invalid, in admitting evidence of past medical expenses that was incompetent and not properly authenticated, and in granting the Guillorys' motion for JNOV and denying its motion for JNOV. Because of its potentially preclusive effect on the remaining assignments of error, we will address the validity of the waiver first.

## ANALYSIS

The trial court granted summary judgment to the Guillorys on the issue of whether American Home's policy afforded UM benefits. We review grants of summary judgment de novo using the same standards as would the trial court. *Vizzi v. Lafayette City-Parish Consol. Gov't*, 11-2648 (La. 7/2/12), 93 So.3d 1260.

We first note that no judgment granting summary judgment in favor of the Guillorys appears in the record. Rather, we only have the "Judgment on Jury Verdict" dated October 5, 2011. The Code of Civil Procedure, specifically La.Code Civ.P. arts. 1911, 2082, and 2083, limit appeals to signed final judgments and interlocutory judgments when allowed by law. However, once we have

3

jurisdiction over an action, we are mandated to "render any judgment which is just, legal, and proper upon the record on appeal. La.Code Civ.P. art. 2164. Because the court's oral rendition affected the presentation of the case to the jury, we will consider the issue. *See Gonzales v. Xerox Corp.*, 254 La. 182, 320 So.2d 163 (1975). Furthermore, because there was no need to argue that a new policy was issued in 2005, the Guillorys contend that they should not be penalized now for failing to make that argument then. Parties are not precluded from filing multiple summary judgments under the rule in *Clement v. Reeves*, 07-1154, 07-1155 (La.App. 3 Cir. 1/30/08), 975 So.2d 170, *writ denied*, 08-0482 (La. 4/18/08), 978 So.2d 355, therefore our previous ruling should not be binding upon them when they failed to argue that a new policy was issued.

The doctrine of law of the case is a discretionary doctrine. *Id.* In *Clement*, 975 So.2d at 174, we quoted our colleagues on the second circuit:

> Typically, following the "law of the case" doctrine, reargument of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. . . . *Rogers v. Horseshoe Entm't*, 32,800, p[p]. 5-6 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, 600-01, *writ denied*, 00-2894, 00-2905 (La. 12/8/00), 776 So.2d 463, 464.

Because the Guillorys were not presented with the actual opportunity to make the argument that new policies were issued, we choose to review this matter fully and to not rely on the law of the case doctrine.

As noted above, the Guillorys claim that they did not argue that a new policy was issued in 2005 because they relied on jurisprudence that held that the name of the insured must be included on the rejection form for it to be valid. They also argue that since our decision, they have conducted discovery that convinces them that each year a new policy was issued to Cox. A new policy was issued, the

4

Guillorys argue, because each year intensive negotiation occurred between Cox and American Home that involved the preparation and filing of applications for insurance.

Louisiana Revised Statutes 22:1295(1)(a)(ii) (emphasis added) provides, relative to the requirement of executing a new waiver:

> Any changes to an existing policy, regardless of whether these changes create new coverage, *except changes in the limits of liability*, do not create a new policy and do not require the completion of new uninsured motorist forms. For purposes of this Section, a new policy shall mean an *original* contract of insurance which an insured enters into *through the completion of an application on the form required by the insurer*.

A proper analysis of this matter, then, requires us to answer two questions: Does the completion of an application for insurance create an original contract of insurance, and did the limits of liability coverage change?

### *Does the completion of an application for insurance create an original contract of insurance?*

Louisiana Revised Statutes 22:1295(1)(a)(ii), in relevant part, states "a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer." The statute is clear that an insured can modify a policy without creating a new policy. Such changes might include new coverage, but cannot include changes in the limits of liability. When changes other than liability limits are completed, a new uninsured motorist selection form is not required. In contrast to changes during the term of the contract, a new policy can be created. **This is not the same as modifying a contract during its term.** A new policy is created when an original contract of insurance is entered into upon completion of an application on the form required by the insurer. Whether a policy has been renewed or whether a policy has been submitted as a new application is a factual question.

5

It is incorrect to assert that a new policy can **only** be created when there is a change in liability limits. Louisiana Revised Statutes 22:1295(1)(a)(ii) is clear that during the term of a policy it can be modified without creating a new policy; however, if the liability limits are changed, this is a way to enter into a new policy which would require a new UM selection form. Another way to enter into a new policy arrangement is further laid out in the statute: through completion of an application on the required form. Furthermore, it is important not to confuse changes during the term of a policy with a renewal of a policy. Louisiana Revised Statutes 22:1266, in relevant part, defines "renewal" or "to renew" as:

> [T]he issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term.

A policy can be renewed, and this does not require a new waiver of UM coverage. A policy can also be modified. The modification will not require a new waiver of UM coverage unless the modification is of liability limits. This is because a modification of liability limits creates a new policy. On the other hand, a new application on the required form also creates a new policy, which also requires a new waiver of UM coverage.

American Home argues that a valid uninsured motorist waiver was executed on December 31, 2002. This waiver applied to policy coverage from 2003-2004. Two terms of contract followed the 2002 waiver. Both UM waivers under these terms were found to be invalid. Therefore, American Home argues, Cox renewed the policy executed in 2002 for the 2004-2005 term and the 2005-2006 term (the term when the accident in question occurred). For American Home to win on this renewal argument, it must show that the 2003 policy was renewed in both 2004

6

and 2005 and that 1) no changes to the liability limits were made, or 2) no new application process occurred.

The negotiation process between Cox Enterprises and American Home is distinctive and important to the application of the law. Cox Enterprises, through its broker, procures insurance coverage by submitting "market specifications" to one or more insurers. The insurers then bid on the coverage. This negotiation process is not a mere renewal, it is an application process. Some years, applications are submitted to multiple companies with those companies each submitting bids. Other years, the application may have been only submitted to American Home. Furthermore, there are material differences between the 2003, 2004, and 2005 policies, which support the Guillorys' argument that the policies of 2003-2004, 2004-2005, and 2005-2006, were separately negotiated policies.[2] Nevertheless, following this negotiation period, new forms were filled out. As stated above, new UM coverage waivers were signed in 2003 and 2004, but these were both found to be invalid.

As regards to the second issue at hand, it is incumbent upon us to decide whether the "market specifications" submitted by Cox is tantamount to an application "on a form provided by the insurer" as required by the statute. Testimony submitted reveals that Cox does not submit applications as individuals do. Cox went through the application process in 2003 and 2004 as though it were purchasing insurance for the first time. The two corporate entities mutually worked to hammer out details between them on what becomes an application prepared by and agreed to by both, which then became the law between the two

---

[2] The aggregate limit of auto coverage was changed from $2,000,000.00 to $4,000,000.00. The Med pay limits changed. The limits of liability for auto coverage changed from $2,000,000.00 to $2,000,000.00 minus the insured's cost of defense.

parties. This is the very situation the legislature described when it defined "new policy" in La.R.S. 22:1295(1)(a)(ii).

It thus seems clear that the "market specification" prepared by Cox was also "the completion of an application on the form required by the insurer." Since it was the only application used by the parties and was used by the insurer to receive a request for insurance and to set rates. Louisiana Revised Statutes 22:1295(1)(a)(ii) supports the trial court's ruling.

The record reflects that the premiums were negotiated every year between Cox, its insurance broker, and American Home. Cox and its broker shopped for coverage every year and conducted rate and coverage negotiations, including with American Home. Completion of an application for insurance creates a new original contract of insurance.

### *Did the limits of liability coverage change?*

Because we find a new policy was created, a finding of changes in liability coverage is not required for the necessity of a new UM waiver form. Nevertheless, we will discuss liability limits changes. Louisiana Revised Statutes 22:1295(1)(a)(ii), in relevant part, states: "[a]ny changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms."

In the Guillorys' motion for partial summary judgment, they maintained that the successive policies were not renewals of the preceding policies. In support of their motion, the Guillorys attached the affidavit of Gary Beck, a claims processor, who attested that he had been employed in the insurance industry for thirty-five years as of 2011, that he reviewed the successive policies and determined that the policies were not renewals "based upon the industry standards and the generally

8

accepted industry terminology." Beck also attested that his review of the policies indicated that the aggregate liability limit was changed from $2,000,000.00 to $4,000,000.00 when Cox Cable Humboldt, Inc., was added as an insured, and that the liability limit was changed from a flat $2,000,000.00 to $2,000,000.00 less the cost of defending against a claim. Beck also pointed out other changes to the policy, such as a change in the medical payments provisions.

The statute clearly indicates that "[a]ny changes to an existing policy . . . except changes in the limits of liability, do not create a new policy." It seems clear from the facts of the case that we're dealing with a new policy. Beck attested that his review of the policies indicated that the aggregate liability limit was changed from $2,000,000.00 to $4,000,000.00 when Cox Cable Humboldt, Inc., was added as an insured, and that the liability limit was changed from a flat $2,000,000.00 to $2,000,000.00 less the cost of defending against a claim.

We therefore conclude that the trial court did not err as a matter of law in granting the Guillorys' motion for summary judgment. The 2004 and 2005 policies were not renewals within the meaning of La.R.S. 22:1295 as 1) a new negotiation was conducted and 2) the policy limits were changed. Accordingly, the UM coverage waiver executed by Cox's authorized representative in December 2002 was not effective and UM coverage was afforded.

*Medical Bills*

A next issue before us is whether the medical bills were properly introduced at trial. Guillory sustained a number of injuries as a result of this accident. Prior to trial, counsel for Guillory provided counsel for the defendant with a copy of all medical bills. At trial, counsel for defendant objected to introduction of the bills, arguing they were not properly admissible as they were not properly certified. This objection was denied, and the medical bills were subsequently introduced.

9

The total medical bill summary sheet reflected $61,571.31. The jury subsequently awarded $50,000.00 in past medical expenses.

The bills were identified by Guillory as bills from doctors he had been to and of treatment he had received. Medical evidence and testimony of the doctors was also admitted. The doctors attested to Guillory's injuries and as to the treatment they provided. Louisiana Revised Statutes 13:3714(A) (emphasis added) provides:

> Whenever . . . a copy of a bill for services rendered, . . . **certified or attested to** by the state health care provider or the private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.

The purpose of the hospital records exception to the hearsay rule is to save a litigant the difficulty and expense of producing as a witness each person who assisted in the treatment of the patient. *State v. Juniors*, 03-2425 (La. 6/29/05), 915 So.2d 291. The medical bills entered into evidence were attested to by the health care providers. They were then correctly received as prima facie proof of their contents. Counsel for Defendants had the opportunity to examine those witnesses under cross-examination. The medical bills were properly introduced into evidence.

### JNOV, Jury Findings

The final issue is whether the granting of the Plaintiffs' JNOV by the trial court should be affirmed. American Home additionally argues that its JNOV was improperly denied.

A motion for JNOV should be denied if there is evidence opposed to the motion of such quality and weight that reasonable persons in the exercise of

impartial judgment might reach different conclusions. *Scott v. Hosp. Serv. Dist. No. 1 of St. Charles Parish*, 496 So.2d 270 (La.1986). In making this determination, all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829 (La.1991). The rigorous standard for granting a motion for JNOV is based on the principle that "[w]hen there is a jury, the jury is the trier of fact." *Scott*, 496 So.2d at 273. A motion for JNOV should be granted only when the evidence points so strongly in favor of the moving party such that reasonable men could not reach different conclusions. *Hyatt v. Raggio*, 99-887 (La.App. 3 Cir. 2/2/00), 757 So.2d 773, *writ denied*, 00-1431 (La 6/23/00), 765 So.2d 1050.

The jury had the opportunity to hear evidence as to Guillory's past injuries and treatment. They analyzed the medical bills and came to the conclusion that $50,000.00 in past medical expenses was an appropriate award. Great deference must be given to the trier of fact's findings. It cannot be said that the evidence points strongly in favor of the moving party that reasonable men could not reach different conclusions. The jury was reasonable in its determination.

The jury found that Guillory suffered past and future physical pain or mental pain and suffering or loss of enjoyment related to the accident. Given the evidence presented at trial and the record, the jury awarded $10,000.00 in general damages and $50,000.00 in past medical expenses. The trial judge found it was inconsistent that Guillory be awarded future medical expenses, while at the same time being awarded only $10,000.00 in general damages. The jury was likely influenced by Guillory's testimony that he ran a twenty-six-mile marathon after the accident. Guillory also testified at trial that he lied under oath in a deposition in July of 2011 about running races. He further admitted he concealed his running activities from his own doctors. Guillory attempted to explain his exercise regime with the fact

that he has a "high pain tolerance." "It is well established that determination of general damages is within the great, even vast, discretion of the trier of fact." *Sciambra v. Jerome Imports, Inc.*, 05-0260, p. 5 (La.App. 4 Cir. 12/14/05), 921 So.2d 145, 149. It cannot be said that the jury was unreasonable in awarding $10,000.00 in general damages to Guillory.

Finally, the jury's award of $0.00 in loss of consortium to Mrs. Guillory was based on evaluations of witness credibility. The trial judge increased the award to $25,000.00 on the condition "you are going to award this to the kids." This is clear error. Furthermore, Guillory and Mrs. Guillory were only married for one month at the time of the accident. Testimony showed that Mrs. Guillory was employed in a long-term career at the time of the accident and her career was not interrupted or impacted by her husband's injuries. The jury was also likely influenced by Guillory's admitted physical activities and Mrs. Guillory's admitted involvement in Guillory's perjury. It cannot be said that the jury was unreasonable in awarding $0.00 in loss of consortium to Mrs. Guillory.

American Home's JNOV was properly denied and the Guillorys' JNOV was improperly granted regarding past medical expenses, general damages, and loss of consortium. The trial judge increased the Guillory's past medical award from the jury's award of $50,000.00 to $61,571.00 and further increased the jury's general damages award from $10,000.00 to $300,000.00. The trial judge also increased Mrs. Guillory's award of loss of consortium from $0.00 to $25,000.00. The JNOV must be reversed in its entirety and the judgment of the jury reinstated.

**CONCLUSION**

Cox and American Home had a "new policy" as defined under La.R.S. 22:1295(1)(a)(ii) such as to require a new waiver of uninsured motorist coverage. Furthermore, the liability limits were changed, which also necessitated a new

waiver of uninsured motorist coverage.  Both parties' motions for JNOV should have been denied as reasonable persons in the exercise of impartial judgment might reach different conclusions.  Therefore, the jury awards for Guillory's past medical expenses, Guillory's general damages, and Mrs. Guillory's loss of consortium should be reinstated.

All costs of this appeal are taxed to American Home.

**AFFIRMED IN PART; REVERSED IN PART.**

JONATHAN GUILLORY, ET AL.

VERSUS

PROGRESSIVE INS. CO., ET AL.

**Gremillion, J., dissents and assigns written reasons.**

I dissent from the majority's ruling and would reverse the trial court's grant of summary judgment.

This court previously determined that the 2002 rejection met the formal requirements of a valid uninsured motorist coverage waiver. *Guillory v. Progressive Ins. Co.*, 09-1056, 09-1508 (La.App. 3 Cir. 10/6/10), 47 So.3d 12, *writ denied*, 10-2519 (La. 12/17/10), 51 So.3d 7, and *writ denied*, 10-2419 (La. 12/17/10), 51 So.3d 11. In that case, we also ruled that there was no change in the policy that required a new waiver. I agree with the court's assessment at that time.

The Guillories claim that they did not argue that a new policy was issued in 2005 because they relied on jurisprudence that held that the name of the insured must be included on the rejection form for it to be valid. *See Gingles v. Dardenne*, 08-448 (La.App. 3 Cir. 11/26/08), 998 So.2d 795, *rev'd.*, 08-2995 (La. 3/13/09), 4 So.3d 799. They also argue that since our decision, they have conducted discovery that convinces them that each year a new policy was issued to Cox. A new policy was issued, the Guillories argue, because the limits of liability coverage changed and each year intensive negotiation occurred between Cox and

American Home that involved the preparation and filing of applications for insurance.

Louisiana Revised Statute 22:1295(1)(a)(ii) provides, relative to the requirement of executing a new waiver, (emphasis added):

> Any changes to an existing policy, regardless of whether these changes create new coverage, *except changes in the limits of liability*, do not create a new policy and do not require the completion of new uninsured motorist forms. For purposes of this Section, a new policy shall mean an *original* contract of insurance which an insured enters into *through the completion of an application on the form required by the insurer*.

In footnote 2 of the majority's opinion, it is stated that the limits of aggregate coverage changed from $2,000,000.00 to $4,000,000.00 during the time between the initial rejection and the accident. That simply is not reflected in the record. The 2003 policy, for which the initial rejection was completed, contained "Endorsement # 012," which specifically provided (emphasis added):

> **5.   Limit   of   Liability   Any   One   Occurrence/Aggregate**
>
> **$2,000,000**
>
> **General Liability Aggregate is *twice the occurrence limit***

No change in the aggregate liability limit occurred in the years that followed.

Louisiana Revised Statute 22:1295(1)(a)(i) reflects a strong public policy in favor of uninsured motorist coverage. It provides in pertinent part:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy. . . for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles[.]

2

If UM coverage had been elected when the provisions regarding the change in the limits of liability to include the cost of defending a suit was added, the policy would not have provided an amount less than the limits of bodily injury liability provided in the policy. Indeed, had UM coverage not been rejected or a lower amount selected, the UM limits would, as a practical matter, have been greater than the liability limits. I would not find that a change in the terms of the policy to deduct the cost of defending a liability claim from the policy's liability coverage would result in a change in the liability limits that would require execution of a new waiver. The limits of coverage did not change.

The record reflects that the premiums were negotiated every year between Cox, its insurance broker, and American Home. The nominal liability limits did not change between 2003 and the 2005 renewals. It is true that Cox and its broker did shop coverage every year and did conduct rate and coverage negotiations, including with American Home. American Home argues that if the liability limits do not change, the policy is a renewal, and no new waiver or selection of lower limits is required.

But, the Guillories argue, Section 1295 should be read to mean that if an application is submitted, the policy that follows is an original contract of insurance and is thus a new policy for which a waiver or selection is required. Because Cox completed new applications every year, new policies were being issued every year.

If one shops for a new insurance policy and learns that the best deal is the policy one already has, that does not create a new policy under the statute. Only the most strained interpretation of Section 1295 could determine that an "original contract of insurance" results every time an application for coverage is submitted. The issue in this case is whether the 2005 policy was "new" under Section 1295. I

3

submit that no "original contract of insurance" was issued because the terms of the coverage provided by American Home never changed, other than the aforementioned deduction from the liability limits of the cost of defense.

I also note that in the context of the dealings between Cox and American Home, the language of the policy provides for renewal. Endorsement IL 02 77 07 02, attached to and part of the 2003 policy, is entitled, "Louisiana Changes – Cancellation and Nonrenewal." It provides that American Home could only refuse to renew the policy if it delivered to Cox a written notice of its intent sixty days before the expiration date, or its anniversary date if written for more than one year with no fixed expiration date. The only circumstance under which such a notice is not required is if American Home or another company within its insurance group offered to issue a renewal policy, or if Cox had obtained replacement coverage or had agreed in writing to obtain replacement coverage. None of those events took place, for, indeed, American Home issued a renewal policy to Cox.

Because there was no change in the policy limits and no issuance of a new policy, I would reverse the trial court. Thus, I respectfully dissent.

4