PICKETT, Judge.
h Insurer appeals the trial court’s grant of summary judgment in favor of the plaintiff, declaring that the uninsured/underin-sured motorist (UM) coverage waivers that its insured executed were invalid; therefore, its commercial auto policy included UM coverage for the plaintiffs’ damages. For the following reasons, we reverse that judgment.
FACTS
On June 21, 2013, Lonny Hayes was injured in the course and scope of his employment with O’Neal’s Feeder Supply, Inc. when Diana Gonzales failed to obey a traffic sign, and her vehicle collided with the vehicle Mr. Hayes was driving. Ms. Gonzales and the passengers in her vehicle were killed in the collision, and Mr. Hayes suffered severe injuries. When the accident occurred, Mr. Hayes was driving a vehicle owned by O’Neal’s and insured by a Louisiana commercial automobile policy of insurance issued by Penn Millers Insurance Company.
Mr. Hayes and his wife sued Ms. Gonzales and her insurer, State Farm Automobile Insurance Company; his own insurer, Progressive Security Insurance Company; and Penn Millers. The plaintiffs asserted that State Farm’s insurance policy did not provide adequate coverage for their claims and that Progressive’s and Penn Millers’ insurance policies provided UM coverage for their claims. Penn Millers denied the plaintiffs’ claims, asserting that O’Neal’s had waived UM coverage for the commercial auto policy it issued in favor of O’Neal’s that was in effect on June 21, 2013.
The plaintiffs filed a motion for partial summary judgment on the issue of whether Penn Millers’ commercial auto insurance policy provided UM coverage for the plaintiffs’ claims. Thereafter, Progressive *1278 filed a motion for partial ^summary judgment in which it adopted the plaintiffs' motion for partial summary judgment. After a hearing held on January 21, 2016, the trial court granted summary judgment in favor of the plaintiffs, finding no valid rejection or waiver of UM coverage existed for O’Neal’s commercial auto policy; therefore, the policy provided UM coverage to O’Neal’s Feeder Supply, Inc. on June 21, 2013. The judgment was designated a final judgment as provided in La. Code Civ. P. art. 1915(B)(1). Penn Millers appealed the judgment.
ASSIGNMENTS OF ERROR
Penn Millers assigns two errors with the trial court’s grant of summary judgment in favor of the plaintiffs:
1. The district court erred in finding the UM waiver validly executed in 2007 did not effectively waive coverage on June 21, 2013, the date of [the plaintiffs] accident.
2. The district court erred in finding the UM waiver validly executed in 2011 did not effectively waiver coverage on June 21, 2013, the date of [the plaintiffs] accident.
DISCUSSION
An appeals court reviews summary judgments de novo, using the same criteria as the trial court. Gray v. Am. Nat’l Prop. & Cas. Co., 07-1670 (La. 2/26/08), 977 So.2d 839. In order to prevail on a motion for summary judgment, the moving party must show that “there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.” La.Code Civ.P. art. 966(A)(3).
Generally, interpretation of an insurance contract concerns a legal question that can be resolved in the framework of a motion for summary judgment Cutsinger v. Redfern, 08-2607 (La. 5/22/09), 12 So.3d 945. Insurance policies are interpreted according to the general rules of contract interpretation, and liability insurance policies are interpreted to provide coverage not deny coverage. Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827 (La. 5/22/07), 958 So.2d 634.
Louisiana law provides that “[n]o automobile liability insurance” policy shall be issued in the state unless it provides UM coverage for persons injured in accidents involving “owners and operators of uninsured or underinsured motor vehicles.” La.R.S. 22:1295(l)(a)(i). This law embodies a strong public policy to allow innocent automobile accident victims to fully recover their damages. Cutsinger, 12 So.3d 945. “Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected.” Duncan v. USAA Ins. Co., 06-363, p. 4 (La. 11/29/06), 950 So.2d 544, 547.
The law further provides, however, that a named insured can reject UM coverage or select UM coverage with lower limits. Subsection 1295(l)(a)(ii) sets forth what is required for an insured to waive UM coverage:
Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative .... The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the *1279 same named insured by the same insurer or any of its affiliates.... Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
Statutory exceptions to UM coverage must be strictly interpreted, and the insurer must prove that any named insured of the policy properly executed a written waiver rejecting UM coverage equal to bodily injury coverage, selected lower limits, or selected economic-only coverage. Duncan, 950 So.2d 544; La.R.S. 22:1295(l)(a)(ii). The supreme court in Duncan identified six tasks which must be performed to complete the UM waiver form prescribed by the commissioner of insurance in order to reject UM coverage:
(1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
Duncan, 950 So.2d at 551. Failure to comply with one of these six tasks results in an invalid rejection of UM coverage. Duncan, 950 So.2d 544. Importantly, “[t]he insurer cannot rely on the insured’s intent to waive UM coverage to cure a defect in the form of the waiver.” Id. at 553.

Did the June 5, 2007 UM waiver effectively waive UM coverage June 21, 2013?

In their motion, the plaintiffs argue O’Neal’s did not waive UM coverage for the June 21, 2013 accident. Penn Millers contends, however, that O’Neal’s executed a valid UM waiver on June 5, 2007, which remained effective as of the date of the accident.
The plaintiffs first assert that the 2007 UM waiver is not valid because it does not contain a policy number. In Carter v. State Farm Mut. Auto. Ins Co., 07-1294 (La. 10/5/07), 964 So.2d 375, the supreme court held that the UM waiver at issue was valid although it did not include the policy number because the commissioner’s regulations in effect at that time provided the failure to include a ^policy number on a UM waiver for a new policy does not render the waiver invalid if the policy number was not available when the waiver was executed. See also Commissioner of Insurance LIRC Bulletin 98-03.
Penn Millers introduced the affidavit of the insurance producer who worked with O’Neal’s on its commercial auto policy in which the producer attests that the policy number for that policy was not available when O’Neal’s representative executed the application and UM waiver form for that policy. Accordingly, O’Neal’s June 5, 2007 UM waiver was not invalid because the policy number was not included on the waiver form.
In their second argument, the plaintiffs argue that O’Neal’s submitted a new application for coverage each year; therefore, a new policy was issued each year which required the completion of a new UM waiver each year. In support of this argument, they point out that in 2007 and 2008, O’Neal completed commercial auto forms identifying it as “Applicant,” and that O’Neal’s representatives’ signatures on those forms are identified as “Ap *1280 plicant’s Signature.” Additionally, the plaintiffs reference the fact that while O’Neal’s 2011 commercial auto form identified it as the “Named Insured” in the information portion of the form, its signature line was identified as “Applicant’s Signature.”
The plaintiffs support their position with the UM statute’s definition of a new policy: “an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.” La.R.S. 22:1295(l)(a)(ii). This argument does not consider that the renewal of a commercial automobile policy is defined as the “the issuance of ... a policy succeeding a policy previously issued and delivered by the same insurer or an insurer within the same group of insurers, or the issuance of a certificate or notice |f,extending the term of an existing policy for a specified period beyond its expiration date.” La.R.S. 22:1267(B)(5). Whether an existing policy has been renewed on an application or a new policy has been issued on that application is a fact question. Guillory v. Progressive Ins. Co., 12-1284 (La.App. 3 Cir. 7/3/13), 117 So.3d 318.
Penn Millers contends that it renewed O’Neal’s commercial auto policy annually since 2007; therefore, the 2007 UM waiver remained effective the date of the accident. It supports this argument with documentation, including seven forms identified as “Declarations: General Policy Information” that correspond to the policies it issued to O’Neal’s beginning in 2007 and continuing through 2013. The 2007 declarations form identifies the insured as O’Neal’s, the policy number as PAC 2603726-01, the account number as 00000031ZY, and the limit of insurance as $1 million. The 2007 declarations form also identifies the “Transaction” as “New Policy.” Every declarations form after the 2007 form includes the same identification information with one exception: the policy numbers after 2007 are PAC 2603726-02 for 2008 through PAC 2603726-07 for 2013. The last two numbers “02” through ‘07” reflect the number of years the policy had been in effect. The limit of insurance on each declarations form remained $1 million during those years. Moreover, the 2008-2013 declarations forms identify the “Transaction” as “Policy Renewal Certificate for PAC 2603716-01” through “PAC 2603716-06.” This evidence establishes that Penn Millers renewed O’Neal’s commercial auto policy each year and did not issue a new policy each year.
The plaintiffs next argue that an increase in O’Neal’s limits of liability under the “Umbrella/Excess Section” of Penn Millers’ policy in 2009 from $2 million to $3 million required a new UM waiver and that no valid UM waiver form existed at the time of Mr. Hayes’ accident. Penn Millers contends that the 2009 increase in |70’Neal’s general liability umbrella policy limits from $2 million to $3 million did not require a new UM waiver for the commercial auto policy because it is a “General Liability policy that sits over multiple risks[;] it is not a motor vehicle policy.”
Penn Millers’ argument was addressed in Southern American Insurance Co. v. Dobson, 441 So.2d 1185 (La.1983) (on rehearing). The facts in Dobson are similar to the facts here: an employee was injured while driving his employer’s vehicle and the tortfeasor was underinsured. The employer in Dobson maintained UM coverage on its vehicle and had a general liability umbrella policy. Initially, the supreme court held that umbrella and excess policies were not automobile liability insurance policies for the purposes of La.R.S. 22:1406(D)(1)(a), now La.R.S. 22:1295(1) (a) (ii), and that UM waivers were not required for such policies. On rehearing, the court reversed its position, *1281 finding general liability umbrella policies “unquestionably apply to liability ‘arising out of the ownership, maintenance, or use of a motor vehicle.’ That such coverage is made to depend on a primary policy or that the policy contains other provisions which cover other types of losses makes no difference to this central fact.” Id. at 1190. The supreme court concluded that primary policies and umbrella policies both require written UM waivers. Id. See also Futch v. Commercial Union Insurance Co., 93-493 (La. 10/28/1993), 625 So.2d 1019, where the supreme court held that even though the plaintiffs employer’s multiperil policy did not provide auto coverage, the employer’s umbrella policy provided UM coverage because no valid waiver existed and the umbrella policy “provided ‘comprehensive general liability* coverage, including automobile insurance for use of nonowned and hired automobiles.” Id. at 1020.
|sThe holdings in Dobson, 441 So.2d 1185, and Futch, 625 So.2d 1019, do not directly address the plaintiffs’ argument, but they illuminate the fact that auto policies and umbrella policies are separate and distinct policies for the purpose of UM coverage. Therefore, when O’Neal’s umbrella policy limit increased from $2 million to $3 million in 2009, a new UM waiver was required for that umbrella policy. The commercial auto policy did not require a new UM waiver at that time, however, because it provided $1 million coverage from the time of its inception through the date of the accident. Accordingly, we find that the increase in O’Neal’s umbrella policy limits did not require a new UM waiver for its commercial auto policy and that the May 16, 2007 UM waiver executed by O’Neal’s was valid and remained effective at the time of the June 21, 2013 accident.
DISPOSITION
For the reasons discussed herein, the judgment of the trial court granting summary judgment in favor of Lonny Hayes, individually and as administrator of the estate of his minor child, Garret Hayes, and Melissa Hayes is reversed. The costs of this appeal are.assessed equally to all parties.
REVERSED.
Chatelain, J., dissents and assigns reasons.
Conery, J., concurs in the result and-assigns reasons.