JOYCE NORDSTROM AND      *        NO. 2019-CA-0577
DAVID NORDSTROM

                             *

VERSUS                                 COURT OF APPEAL

                             *

NEW YORK MARINE AND          FOURTH CIRCUIT
GENERAL INSURANCE            *
COMPANY, NEW ORLEANS        STATE OF LOUISIANA
CITY SIGHTSEEING, LLC,    * * * * * * *
TASHA BATISTE, JOHN DOE,
XYZ INSURANCE COMPANY,
AND AUTOMOBILE CLUB
INTER-INSURANCE
EXCHANGE D/B/A AAA OF
MICHIGAN


APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-10174, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Edwin A. Lombard**
* * * * * *
(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins,
Judge Tiffany G. Chase)

Jason Giles
Brian King
James E. Courtenay
THE KING FIRM, LLC
2912 Canal Street
New Orleans, LA 70119

       COUNSEL FOR PLAINTIFF/APPELLANT

Sidney J. Angelle
Brant J. Cacamo
LOBMAN, CARNAHAN, BATT, ANGELLE & NADER
400 Poydras Street, Suite 2300
New Orleans, LA 70130

       COUNSEL FOR DEFENDANT/APPELLEE

                               **REVERSED AND REMANDED**

                               **DECEMBER 11, 2019**

The Appellants, Joyce Nordstrom and her husband David Nordstrom, seek review of the February 20, 2019 judgment of the district court, granting the motion for summary judgment of the Appellee, New York Marine and General Insurance Company ("NYM"). Pursuant to our *de novo* review, we reverse the judgment of the district court, finding that there is a genuine issue of material fact as to whether the policy is a renewal or a new policy, and remand for further proceedings.

**Facts and Procedural History**

The Nordstroms visited New Orleans in October 2016, and purchased a hop-on hop-off tour on a double-decker tour bus in New Orleans operated by New Orleans City Sightseeing, LLC, ("NOCS"). The Nordstroms maintain that Mrs. Nordstrom was injured while riding on the NOCS tour bus, when the tour bus driver allegedly made an abrupt stop to avoid a phantom driver. Mrs. Nordstrom avers that she was thrust out of her seat and sustained serious injuries for which she was treated at the scene. She maintains that she received further medical treatment upon her return home to Michigan.

In 2017, the Nordstroms sued NYM as the uninsured or underinsured motorist ("UM") carrier of NOCS at the time of the alleged accident.

On May 21, 2018, NYM filed a motion for summary judgment, arguing that there is no genuine issue of material fact that NYM did *not* provide a policy of UM coverage to NOCS because NOCS executed a valid waiver of UM coverage dated October 22, 2015, that was in force and effect on the date of the alleged incident.[1] NYM attached to its motion three affidavits from: Doug Hathaway, the Niche President for underwriting Prosight Specialty Insurance/NYM and General Insurance; the NOCS General manager Emily Valentino; and the NOCS Managing member Michael Valentino. Attached to the affidavits were the 2015 NYM policy ("the 2015 policy"), in effect from July 2015 to July 2016, with the UM rejection form attached, and the 2016 NYM policy ("the 2016 policy") in effect from July 2016 thru the date of the alleged accident.

NYM argued that it issued a commercial liability policy, bearing policy number AU201500007486, for the 2015 policy, which had a $1,000,000 liability limit. Emily Valentino, NOCS' general manager, completed the UM rejection form for this policy. The 2016 policy, bearing policy number AU201600007486, was issued by NYM to NOCS in 2016. NYM maintains this policy was a renewal of the 2015 policy. Another UM rejection form was completed by Michael Valentino on or about July 5, 2016; however, this form is alleged to be invlalid.

The Nordstroms opposed the motion for summary judgment asserting that the 2015 UM rejection form was inapplicable to the 2016 policy because separate and distinct applications of insurance were negotiated by NOCS, including an application for insurance dated June 15, 2016. Therefore, the 2016 policy required its own UM rejection form. They further argued that NOCS was actively shopping

---

[1] NOCS executed another UM form in 2016, but NYM did not base its motion for summary judgment on the 2016 NOCS' UM rejection form, which is alleged to be invalid.

for insurance rates prior to executing the 2016 policy with NYM. Thus, they argued that there is a genuine issue of material fact as to whether the 2016 policy was a renewal of the 2015 policy or a new policy as defined by La. Rev. Stat. 22:1295(1)(a)(ii).[2]

The district court, at a February 8, 2019 hearing, granted the motion for summary judgment and read its Reasons for Judgment into the record. The Court granted NYM's motion for summary judgment based upon its determination that the 2015 UM rejection form executed by Ms. Valentino was applicable to the 2016 policy.[3] By judgment dated February 20, 2019, the district court granted NYM's motion for summary judgment, dismissing the claims of the Nordstroms with prejudice. This timely appeal followed.

---

[2] The Nordstroms later filed two respective supplemental oppositions to NYM's motion for summary judgment, which were both granted by the district court. First, they filed an e*x parte* motion to supplement and a motion to continue, wherein they stated that they had not received a reply brief filed by NYM and further authenticated a portion of the exhibits previously submitted. Subsequently, they filed an Unopposed Second Motion to Supplement their opposition with responses to requests for admissions to authenticate the contents of the underwriting file they attached to their initial opposition to be properly considered on summary judgment, as required by La. Code Civ. Proc. art. 966.

[3] The district court explained:

> . . Here, pursuant to the evidence submitted in support of its motion for summary judgment, defendant makes a clear and unmistakable showing that the New Orleans City Sightseeing normally waived coverage under this particular policy. Emily Valentino initialed next to the option which stated, "I do not want UMBI coverage. I understand that I will not be compensated through UMBI coverage for lost [sic] arising from an accident caused by an uninsured or underinsured motorist." Further the document signed, printed, and dated [sic]. Moreover, the document includes the policy number, name of insured, and individual company. This, coupled with the affidavits of Doug Hathaway and the [sic] Emily Valentino, suggests that there's no issue of material fact, and will preclude summary judgment.

The Nordstroms raise nine assignments of error:

1. Whether the district court erred in granting the motion for summary judgment dismissing with prejudice the Nordstroms' UM claims?

2. Whether the district court erred in failing to properly consider what is a "new policy" under La. Rev. Stat. 22:1295(l)(a)(ii)?

3. Whether the district court erred in failing to consider the original applications of insurance filled out by NOCS when it annually shopped its insurance, creating "new policies" under the terms of La. Rev. Stat. 22:1295(l)(a)(ii)?

4. Whether the district court erred in looking at the intent of the parties by considering and weighing the "history" of the rejections at issue and what NOCS "normally" did?

5. Whether the district court erred in failing to consider the factual issue of why NOCS executed a UM rejection form for what NYM argues was a "renewal" policy?

6. Whether the district court erred in failing to consider the factual questions involved in shopping commercial insurance and how it impacts the question of renewing insurance and/or binding new coverage?

7. Whether the district court erred in failing to construe all factual inferences reasonably drawn from the evidence in favor of the Nordstroms, as the party opposing the motion for summary judgment?

8. Whether the district court erred in failing to resolve all doubt in favor of the Nordstroms, as the party opposing the motion for summary judgment?

9. Whether the district court erred in failing to allow further discovery on whether the UM rejection forms in the underwriting file, including the rejection form that appears valid and at issue, was filled in and executed on the same date in compliance with *Grey v. Am. Nat. Prop. & Cos. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839, given the multiple copies of forms partially completed in the underwriting file?

While the Nordstroms maintain that there is a need for more discovery and that the district court erroneously considered the "history" of NOCS rejecting UM coverage and what NOCS "normally" did, we pretermit discussion of these assignments of error. First, the Nordstroms failed to raise the need for more discovery before the district court. Thus, this issue is not properly before this Court on appeal. Additionally, the Nordstroms' reference to the wording the district court used in its Reasons for Judgment, which are distinct from the judgment itself, are not reviewable on appeal and are not germane to our *de novo* review, explained below.

The central issue of this appeal is whether there is a genuine issue of material fact that the 2016 policy is a new policy under La. Rev. Stat. 22:1295 (1)(a)(ii), requiring its own rejection form, or is it a renewal of the 2015 policy such that the 2015 UM rejection form is applicable? Pursuant to our *de novo* review and for the reasons more fully explained below, we find that a genuine issue of material fact exists as to this issue.

**Standard of Review**

Summary judgments are reviewed by appellate courts under a *de novo* standard of review, using the same criteria as the trial court. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844. In order to prevail on a motion for summary judgment, the moving party must show that "there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." La. Code Civ. Proc. art. 966(A)(3). "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . . The procedure is favored and shall be construed to accomplish these ends." La. Code Civ. Proc. art. 966 (A)(2).

Documents that may be filed in support of or in opposition to the motion are "pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. Code Civ. Proc. art. 966 (A)(4). Only those documents filed in support of or in opposition to the motion for summary judgment shall be considered, in addition to any documents to which no objection is made. La. Code Civ. Proc. art. 966 (D)(2).

Moreover, the burden of proof on a motion for summary judgment rests with the mover. "Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. Code Civ. Proc. art. 966 (D)(1). The adverse party bears the burden of producing "factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. Code Civ. Proc. art. 966 (D)(1).

"Insurance policies are interpreted according to the general rules of contract interpretation, and liability insurance policies are interpreted to provide coverage not deny coverage." *Hayes v. De Barton*, 16-541, pp. 2-3 (La. App. 3 Cir. 2/15/17), 211 So.3d 1275, 1278 (citing *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634). The *Hayes* Court further explained Louisiana's public policy that UM coverage will be read into a policy except when such coverage is validly rejected, as set forth in La. Rev. Stat. 22:1295(1)(a)(ii):

6

> Louisiana law provides that "[n]o automobile liability insurance" policy shall be issued in the state unless it provides UM coverage for persons injured in accidents involving "owners and operators of uninsured or underinsured motor vehicles." La. Rev. Stat. 22:1295(1)(a)(i). This law embodies a strong public policy to allow innocent automobile accident victims to fully recover their damages. *Cutsinger,* 12 So.3d 945.[4] "Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected." *Id*. (quoting *Duncan v. USAA Ins. Co*., 06–363, p. 4 (La. 11/29/06), 950 So.2d 544, 547).

*Id.*, 16-541, pp, 2-3, 211 So.3d at 1278.

Thus, the UM statute is liberally construed, such that the statutory exceptions to coverage are to be interpreted strictly. *Daigle v. Authement*, 96-1662, p. 3 (La. 4/8/97), 691 So.2d 1213, 1214. Any exclusion from coverage in an insurance policy must be clear and unmistakable. *Id*. It is the insurer's burden to prove that an insured "named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Henson v. Safeco Ins. Companies*, 585 So.2d 534, 538 (La.1991). Consequently, in the instant matter the burden of proof is on NYM to establish that NOCS validly rejected UM coverage.

**Discussion**

The instant appeal involves both statutory interpretations as well as the interpretation of an insurance contract as "UM coverage is determined not only by contractual provisions, but also by applicable statutes." *Duncan v. U.S.A.A. Ins. Co*., 06-363, p. 4 (La. 11/29/06), 950 So.2d 544, 547 (citation omitted). "Whether a policy has been renewed or whether a policy has been submitted as a new

---

[4] *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945.

application is a factual question." *Guillory v. Progressive Ins. Co.*, 12-1284, p. 5 (La. App. 3 Cir. 7/3/13), 117 So.3d 318, 323.

In the instant matter, two statutes are applicable:

- La. Rev. Stat. 22:1295(1)(a)(ii), entitled *Uninsured motorist coverage;* and

- La. Rev. Stat. 22:1267, entitled *Commercial insurance; cancellation and renewal*.

The requirements for those rejecting uninsured motorist coverage are set forth in La. Rev. Stat. 22:1295(1)(a)(ii), which requires the completion of a form provided by the Commissioner of Insurance:

> (ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. **A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates.** An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require

the completion of new uninsured motorist selection forms. ***For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer***. [Emphasis added].

The Third Circuit in *Guillory* explained that La. Rev. Stat. 22:1295(1)(a)(ii), establishes that a *new policy* is created when policy limits are changed and/or when an application for new insurance policy is completed:

> The statute [La. Rev. Stat. 22:1295(1)(a)(ii)] is clear that an insured can modify a policy without creating a new policy. Such changes might include new coverage, but *cannot include changes in the limits of liability. When changes other than liability limits are completed,* a new uninsured motorist selection form is *not* required. In contrast to changes during the term of the contract, a new policy can be created. This is not the same as modifying a contract during its term. A new policy is created when an original contract of insurance is entered into upon completion of an application on the form required by the insurer. Whether a policy has been renewed or whether a policy has been submitted as a new application is a factual question.
>
> *It is incorrect to assert that a new policy can only be created when there is a change in liability limits*. Louisiana Revised Statutes [sic] 22:1295(1)(a)(ii) is clear that during the term of a policy it can be modified without creating a new policy; **however, if the liability limits are changed, this is a way to enter into a new policy which would require a new UM selection form. Another way to enter into a new policy arrangement is further laid out in the statute: through completion of an application on the required form. Furthermore, it is important not to confuse changes during the term of a policy with a renewal of a policy. . . .**
>
> A policy can be renewed, and this does not require a new waiver of UM coverage. . . . On the other hand, a new application on the required form also creates a new policy, which also requires a new waiver of UM coverage. [Emphasis added].

*Guillory,* 12-1284, pp. 5-6, 117 So.3d at 323-24.

While La. Rev. Stat. 22:1295 states that a properly executed UM rejection form is applicable to the "renewal" of a policy, the statute does not define the term.[5] However, in Section B(5) of La. Rev. Stat. 22:1267,[6] the Louisiana Legislature set forth the definition of a "renewal" policy applicable to commercial liability insurance policies:

> B. For the purposes of this Section, the following terms shall mean:
>
> (5) "Renewal" or "to renew" means the issuance of or the offer to issue by the insurer a policy succeeding a policy previously issued and delivered by the same insurer or an insurer within the same group of insurers, or the issuance of a certificate or notice extending the term of an existing policy for a specified period beyond its expiration date.

Our review of the record, the aforementioned statutes and the Third Circuit opinions of *Guillory* and *Hayes*, reveals that the definition of a new policy and a renewal are met in the instant matter.

In *Guillory*, a Cox Communications Inc. employee and his spouse ("the plaintiffs") filed suit against Cox's automobile insurer, American Home Assurance

---

[5] The Louisiana Legislature has expressed that "[w]hen a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. *Pierce Foundations, Inc. v. Jaroy Const., Inc.*, 15-0785, pp. 6-7 (La. 5/3/16), 190 So.3d 298, 303 (citing La. Rev. Stat. 1:4). "The starting point for interpretation of any statute is the language of the statute itself." *Borcik v. Crosby Tugs, L.L.C.*, 16-1372, p. 4 (La. 5/3/17), 222 So.3d 672, 675.

However, unclear and ambiguous laws, or laws whose application leads to absurd consequences are reviewed under "secondary rules of statutory interpretation to discern the meaning of the statute at issue." *Id.* (citations omitted.) In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*, 16-1372, p. 5 (La. 5/3/17), 222 So.3d at 675.

[6] The Nordstroms maintain that the "renewal" definition contained in the above-referenced statute is inapplicable because it is neither contained in nor referenced in La. Rev. Stat. 22:1295 (1)(a)(ii). Nevertheless, the Louisiana Supreme Court reasoned that "all laws pertaining to the same subject matter must be interpreted *in pari materia,* or in reference to each other." See, e.g., *State v. Williams*, 10-1514, p. 4 (La.3/15/11), 60 So.3d 1189, 1191; La. Civ. Code art. 13. Moreover, the Third Circuit in both *Hayes* and *Guillory* applied La. Rev. Stat. 22:1295 with La. Rev. Stat. 22:1267(B)(5).

Co., seeking UM benefits for a 2005 accident that left the employee injured. American Home asserted that Cox had validly rejected UM coverage in an insurance policy issued a few years prior to the accident which was still applicable as the policy had been continuously renewed. The district court ultimately granted summary judgment in favor of the plaintiffs, determining that American Home's 2005 policy was a new policy, not a renewal. After a jury verdict was rendered for the plaintiffs, both parties filed motions for judgment notwithstanding the verdict; however, the district court granted only the plaintiffs' motion. *Guillory,* 12-1284, pp. 1-3, 117 So.3d at 321-22.

On appeal, American Home argued that a 2002 UM waiver was valid at the time of the 2005 accident. *Id.*, 12-1284, p. 3, 117 So.3d at 322. The *Guillory* Court reasoned that it needed to address two issues: whether the completion of an application for insurance creates an original contract of insurance; and whether the limits of liability changed. *Id.*, 12-1284, p. 5, 117 So.3d at 323.

The Third Circuit noted that negotiations that occurred between American Home and Cox were "distinctive and important to the application of the law." The Court determined there were significant differences between the policies issued for three successive years, noting that: the premiums for the policies were separately and annually negotiated between American Home and Cox; UM waiver forms were completed for each of the policies[7]; and the policy limits had also changed in each of the policies. As a result of the foregoing, the Court reasoned that the completion of an application for insurance created a new original contract of insurance. *Id.*,12-1284, pp. 7-8, 117 So.3d at 324-25. Thus, the *Guillory* Court reversed the district court's grant of summary judgment.

---

[7] The Third Circuit noted that the latter two waivers executed were both invalid.

11

Following the Third Circuit's decision in *Guillory*, the Court again addressed the issue of whether a commercial insurance policy was a "renewal" or a "new policy" under La. Rev. Stat. 22:1295(1)(a)(ii). In *Hayes v. De Barton*, 16-541 (La. App. 3 Cir. 2/15/17), 211 So.3d 1275, an employee was seriously injured when struck by another motorist. He and his wife ("the plaintiffs") sued his employer's insurer, Penn Millers Insurance Company, seeking UM coverage. The district court granted the plaintiffs' motion for partial summary judgment, finding that the insurance policy issued by Penn Millers provided UM coverage. Penn Millers appealed, raising among other issues that its insured had validly waived UM coverage in 2007, which applied to the 2013 accident. *Id*., 16-541, pp. 1-2, 211 So.3d at 1277-78.

The Third Circuit reviewed the plaintiffs' argument that the employer/insured annually submitted new applications for insurance, which the plaintiffs asserted required the annual completion of a UM waiver. Relying upon commercial auto forms for various years that identified the insured/employer as "applicant," the plaintiffs maintained that the statutory definition of a "new policy" was met under La. Rev. Stat. 22:1295(1)(a)(ii), as application forms required by the Employer's insured had been completed. *Id*., 16-541, p. 6, 211 So.3d at 1280.

The *Hayes* Court reasoned, however, that the plaintiffs failed to consider that the policy at issue was a renewal under La. Rev. Stat. 22:1267(B)(5). *Id.* The Court further noted that seven forms identified as "Declarations: General Policy Information," corresponding to the policies it issued to the insured/employer beginning in 2007 and continuing through 2013, were in the record. The initial 2007 declarations form identifies the policy as a "new policy" bearing policy number PAC 2603726-01. However, the subsequently and consecutively issued

declarations forms for policies issued from 2008-2013 included the same identification information, with policy numbers that only changed corresponding to the years the policy had been in effect, as well as identifying them as policy renewals:

> The 2007 declarations form also identifies the "Transaction" as "New Policy." Every declarations form after the 2007 form includes the same identification information with one exception: the policy numbers after 2007 are PAC 2603726–02 for 2008 through PAC 2603726–07 for 2013. The last two numbers "02" through '07" reflect the number of years the policy had been in effect. The limit of insurance on each declarations form remained $1 million during those years. Moreover, the 2008–2013 declarations forms identify the "Transaction" as "Policy Renewal Certificate for PAC 2603716–01" through "PAC 2603716–06." This evidence establishes that Penn Millers renewed O'Neal's commercial auto policy each year and did not issue a new policy each year.

*Id.*, 16-541, p. 6, 211 So.3d at 1280.

The *Hayes* Court reversed the judgment of the lower court on this issue, as well as on other issues, holding that the subsequent policies were renewals. *Id.*

In the instant matter, a review of the 2015 and 2016 policies shows that the limits of liability remained the same, thus, a new policy was not created in this manner. Furthermore, the only change in the policy number is the change in the year the policy was issued from AU**2015**00007486 to AU**2016**00007486, which is factually similar to *Hayes*.

Additionally, another similarity to the facts of *Hayes* is that the declarations page of the 2015 policy states "Previous Policy Number: NEW," whereas the declarations page of the 2016 policy states "Previous Policy Number: AU201500007486." Thus, from the face of these documents it would appear that the 2016 policy was a renewal of the 2015 policy because NYM issued "a policy

succeeding a policy previously issued and delivered" to NOCS, under La. Rev. Stat. 22:1267(B)(5).

Nevertheless, the documents contained in the record also show that a new application for insurance was completed by NOCS as it shopped for competitive rates and/or coverage. Included in the record is a "Public Transportation Application" dated July 10, 2016, the same type of form completed on NOCS' behalf in 2015, showing that NOCS as an "applicant" was shopping for insurance policies. Mr. Valentino also executed a new UMBI rejection form in connection with the 2016 application. Ultimately, NOCS again obtained insurance coverage with NYM in 2016 with the same liability limit, but with a premium lowered by over $8,000, from $153,162 to $144,938, evidencing NOCS and its agents were negotiating for a better rate. As the *Guillory* Court observed, such negotiations are integral to the procurement of a "new policy."

In consideration of the differing facts about the 2016 policy, we recognize that the weighing of conflicting evidence on a material fact has no place in summary judgment procedure. *Patterson v. Al Copeland Enterprises, Inc.*, 95-2288, p. 2 (La. App. 4 Cir. 1/19/96), 667 So.2d 1188, 1190 (citation omitted). Appellate courts, furthermore, must consider whether summary judgment is appropriate under the circumstances of the case and whether there is a genuine or triable issue on which reasonable minds could disagree. *G.A. Lotz Co. v. Alack*, 13-674, p. 7 (La. App. 5 Cir. 4/9/14), 140 So.3d 94, 98.

In the matter *sub judice*, the record contains evidence of both a new policy and a renewal such that reasonable minds could disagree. We determine that there is a genuine issue of material fact as to whether the 2016 policy is indeed a renewal

of the 2015 policy. Therefore, we reverse the judgment of the district court and remand for further proceedings.

## DECREE

For the reasons discussed herein, the February 20, 2019 judgment of the district court granting summary judgment in favor of New York Marine and General Insurance Company, is reversed and the matter is remanded for further proceedings.

**REVERSED AND**
**REMANDED**