STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-28

JON HART

VERSUS

RONNIE MABOU, GEICO CASUALTY COMPANY, TECHNOLOGY
INSURANCE COMPANY, INC, and SHELTER MUTUAL INSURANCE
COMPANY, INC.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 266,943
HONORABLE PATRICIA KOCH, DISTRICT JUDGE

**********

SYLVIA R. COOKS
CHIEF JUDGE

**********

Court composed of Sylvia R. Cooks, Chief Judge, Elizabeth A. Pickett, and Shannon
J. Gremillion, Judges.

REVERSED AND REMANDED.

Brian M. Caubarreaux
Eugene A. Ledet, Jr.
Ethan E. Caubarreaux
Patrick D. Sadler
David A. Johnson
2204 Macarthur Drive
Alexandria, LA 71303
(318) 442-0900
Attorneys for Appellant, Jon Hart

Ryan M. Malone
Duplass, Zwain, Bourgeois

**Pfister, Weinstock, and Bogart**
**3838 North Causeway Boulevard, Suite 2900**
**Metairie, LA  70002**
**(504) 832-3700**
**Attorney for Appellee, Technology Insurance Company**

**COOKS, Chief Judge.**

## FACTS AND PROCEDURAL HISTORY

Jon Hart (Hart) was involved in an auto accident on July 11, 2019. It is undisputed that he was a permissive driver of his employer's, Kay Radio & Electronic Service, LLC, (Kay Radio) 2011 Ford Transit. It is also undisputed that Hart was acting within the course and scope of his employment when the accident occurred. Hart sued the offending driver, Ronnie Mabou and his insurers, as well as his employer's commercial liability insurer, Technology Insurance Company, Inc. (Technology). Technology is the only party remaining against whom Hart has not resolved his claim for damages. Technology is an affiliate of AmTrust Insurance Company of Kansas, Inc. (AmTrust).

AmTrust first issued a commercial insurance policy with one million dollars liability coverage to Kay Radio effective June 1, 2016, through July 1, 2017. The policy, bearing policy number KPP1023233 00, included coverage for commercial fire, commercial auto, and LA Emergency Assessment. The insurance application form identifies the policy as "New Business." Kay Radio signed a State of Louisiana Department of Insurance "Uninsured/Underinsured Motorist Bodily Injury Coverage" (UM) waiver form from Bulletin 08-02. This form was promulgated by the Louisiana Commissioner of Insurance as the State's official required form. The form indicates, with the presence of the initials GW on the appropriate line, the insured's rejection of UM coverage. The form is signed by Glenroy Weishuhn, his name is printed below his signature, and it is dated below his signature "6/27/16." In the box provided on the form at the lower right corner appears the words "AmTrust Insurance of Kansas, Inc."

In March of 2017, AmTrust sent an application for commercial insurance to Kay Radio. This policy was to have an effective date of July 1, 2017, through July

1, 2018. The insurance application form indicated there would be changes to the previous policy which included Kay Radio dropping coverage for commercial fire and LA Emergency Assessment in this policy. The application was accompanied by an officially approved State of Louisiana UM waiver form. This form is signed by Glenroy Weishuhn as the representative of Kay Radio indicating rejection of UM coverage. The form is dated "6-23-17" below the signature line but the form does not bear the policy number, name of the insurance company, or the insurance company's logo in the boxes provided or anywhere else on the form. A policy was issued under a new policy number, KPP1047007 00, again with one million dollars in coverage for commercial auto liability insurance.

In May of 2018, Technology sent an insurance application form to Kay Radio accompanied by an official UM waiver form. The UM form is signed by Kay Radio's representative, Glenda Norris (Norris), indicating rejection of UM coverage. It is dated "6/27/18" below Norris' signature and is stamped at the top "Received Jun 27, 2018." It does not contain a policy number, the name of the insurance company, a group name, or the insurer's logo in the boxes provided or anywhere on the form. Technology issued a policy for commercial auto insurance with one million dollars in liability coverage under a new policy number, TPP1237858 00, with coverage effective July 1, 2018, through July 1, 2019. The "Transaction" is identified on the declarations page as a "renewal."

In July of 2019, Technology sent an insurance application form along with an official Louisiana UM waiver form and an unofficial UM waiver form identified as appropriate for "Louisiana." These documents were provided to Kay Radio through its agent, Brown & Brown of Louisiana, LLC (Brown), after Kay Radio met with Brown to discuss Technology's insurance proposal submitted to Brown. Technology issued a policy for commercial auto liability insurance to Kay Radio

2

covering an effective period of July 1, 2019, through July 1, 2020. The policy number is identified as TPP1237858 01, and the "transaction" is identified on the declarations page as "renewal." The UM waiver form identified as appropriate for "Louisiana" is date stamped "June 27, 2019." This form is signed by Glenda Norris for Kay Radio, but it does not contain the name of an insurance company, a group name, or any insurance company's logo. The officially approved State of Louisiana UM waiver form is also signed by Glenda Norris for Kay Radio on July 3, 2019, indicating rejection of UM coverage. It is date stamped "received July 3, 2019." This UM waiver form does not contain an insurance policy number, and it does not bear the name of the insurance company, a group name, or the insurance company's logo in the boxes provided on the form or anywhere else on the form.

Hart filed a motion for summary judgment asserting there is UM coverage provided to his employer through its policy with Technology. He maintains that the 2017, 2018, and 2019 policies were new policies, none of which contain a valid waiver of UM coverage because each form signed by Kay Radio fails to comply with Louisiana statutory requirements. Technology filed a cross-motion for summary judgment maintaining there is no UM coverage for Kay Radio because it waived such coverage in a form it signed in 2016 attached to the first policy issued by AmTrust. It further maintains that all subsequent policies were renewals and therefore no new UM waiver was required. The trial court denied Hart's motion and granted Technology's motion for summary judgment dismissing it from the suit.

Hart appeals asserting the trial court erred in dismissing his motion and granting Technology's motion for summary judgment. He maintains the trial court committed legal error in finding that the policies issued in 2017, 2018, and 2019 were renewals and thus the original UM waiver signed by Kay Radio in the 2016 application continued to be effective.

**Legal Analysis**

In *Nordstrom v. New York Marine & Gen. Ins. Co.*, 19-577 (La.App. 4 Cir. 12/11/19), 287 So.3d 64, *writ denied*, 20-82 (La. 3/9/20), 294 So.3d 483, the fourth circuit addressed the same issue as presented here, whether there is a genuine issue of material fact that the 2019 policy is a new policy under La.R.S. 22:1295 (1)(a)(i)-(ii)[1], requiring its own rejection form or is it a renewal of the 2016 policy such that

---

[1]     Louisiana Revised Statutes 22:1295(1)(a)(i)-(iii)(emphasis added):

The following provisions shall govern the issuance of uninsured motorist coverage in this state:

(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section. *Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.* The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

(ii) *Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.* The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. *The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and*

the 2016 UM rejection form is applicable? This court has held that the question of "[w]hether a policy has been renewed or whether a policy has been submitted as a new application is a factual question." *Guillory v. Progressive Ins. Co.*, 12-1284, p. 5, (La.App. 3 Cir. 7/3/13), 117 So.3d 318, 323. In this case, as in *Guillory* and *Nordstrom*, there is evidence that the 2019 insurance policy was a "renewal," as labeled by the insurer, as well as competing evidence that it was a new policy issued through an *application* for insurance. Our sister circuit in *Nordstrom*, relying on several decisions by this court, concluded that the factual question of new policy versus renewal of an existing policy could not be decided on summary judgment. Although we conclude the same is true here as to this issue, we find that the undisputed facts compel a legal conclusion dispositive of the case.

It is well-settled that the granting of summary judgment is reviewed *de novo*.

> Summary judgments are reviewed by appellate courts under a *de novo* standard of review, using the same criteria as the trial court. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844. In order to prevail on a motion for summary judgment, the moving party must show that "there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." La. Code Civ. Proc. art. 966(A)(3). "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action .... The procedure is favored and shall be construed to accomplish these ends." La. Code Civ. Proc. art. 966 (A)(2).

---

*shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. **An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy** by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms.* **For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the *completion of an application* on the form required by the insurer.**

(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.

Documents that may be filed in support of or in opposition to the motion are "pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. Code Civ. Proc. art. 966 (A)(4). Only those documents filed in support of or in opposition to the motion for summary judgment shall be considered, in addition to any documents to which no objection is made. La. Code Civ. Proc. art. 966 (D)(2).

Moreover, the burden of proof on a motion for summary judgment rests with the mover. "Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. Code Civ. Proc. art. 966 (D)(1). The adverse party bears the burden of producing "factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. Code Civ. Proc. art. 966 (D)(1).

"Insurance policies are interpreted according to the general rules of contract interpretation, and liability insurance policies are interpreted to provide coverage not deny coverage." *Hayes v. De Barton*, 16-541, pp. 2-3 (La.App. 3 Cir. 2/15/17), 211 So.3d 1275, 1278 (citing *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634). The *Hayes* Court further explained Louisiana's public policy that UM coverage will be read into a policy except when such coverage is validly rejected, as set forth in La. Rev. Stat. 22:1295(1)(a)(ii):

> Louisiana law provides that "[n]o automobile liability insurance" policy shall be issued in the state unless it provides UM coverage for persons injured in accidents involving "owners and operators of uninsured or underinsured motor vehicles." La. Rev. Stat. 22:1295(1)(a)(i). This law embodies a strong public policy to allow innocent automobile accident victims to fully recover their damages. *Cutsinger,* 12 So.3d 945. "Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, *as UM coverage will be read into the policy unless validly rejected." Id.* (quoting *Duncan v. USAA Ins. Co.*, 06-363, p. 4 (La. 11/29/06), 950 So.2d 544, 547).

*Id.*, 16-541, pp, 2-3, 211 So.3d at 1278.

Thus, the UM statute is liberally construed, such that the statutory exceptions to coverage are to be interpreted strictly. *Daigle v. Authement*, 96-1662, p. 3 (La. 4/8/97), 691 So.2d 1213, 1214. Any

exclusion from coverage in an insurance policy must be clear and unmistakable. *Id.* It is the insurer's burden to prove that an insured "named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Henson v. Safeco Ins. Companies*, 585 So.2d 534, 538 (La.1991). Consequently, in the instant matter the burden of proof is on NYM to establish that NOCS validly rejected UM coverage.

*Nordstrom*, 287 So.3d at 68-69.

Likewise, in this case, the burden of proof is on Technology in its cross-motion for summary judgment to prove that Kay Radio validly rejected UM coverage in the policy issued July 1, 2019, which covered the date of Hart's accident on July 11, 2019. To meet its burden Technology asserts that the policy issued in 2019 was merely a renewal of a previous policy issued by its affiliate, AmTrust, in 2016. It asserts that the UM waiver form signed by Kay Radio's representative attached to the 2016 insurance policy, Policy Number KPP1023233 00, was validly executed indicating Kay Radio's waiver of UM coverage. On appeal, Hart does not dispute the validity of the 2016 waiver form. Indeed, that form complies with all the Louisiana statutory requirements for execution of a valid waiver of UM coverage. We note that the fact this form is dated by the insured's signing representative some twenty-six (26) days after the effective date of the policy does not invalidate the form. Louisiana courts have recognized that our statutory law provides the form may be signed at any time during the policy period and once properly executed constitutes a valid waiver which is conclusively a part of the insurance contract. *See* La. R.S. 22:1295 (1)(a)(ii). Technology asserts if the 2019 policy was merely a renewal of the 2016 policy there is no UM coverage for Hart's accident because coverage was validly waived in the 2016 UM waiver form. It does not dispute that the approved form attached to the 2019 application for insurance coverage does not meet the requirements of a valid waiver form.

7

In support of its cross-motion for summary judgment Technology submitted affidavits by Norris identified therein as a co-owner and an authorized representative of Kay Radio. She, along with her brother, Glenroy Weishuhn, attests that Kay Radio did not want UM coverage and rejected it on every form presented to it by Technology and its affiliate, AmTrust. Our courts have held that the intent of the insured is not controlling when deciding the issue of a valid waiver of UM coverage.

> As stated in *Higginbotham v. USAgencies Casualty Insurance Co., Inc.*, 17-491, 17-497, p. 11 (La.App. 3 Cir. 6/13/18), 247 So.3d 916, 923, *writ denied*, 18-1217 (La. 10/29/18), 254 So.3d 1213, "The intent of the parties is quite simply irrelevant where a UM form does not meet the requirements of Louisiana law[.]"

*Barras v. Cardinal Servs., LLC*, 19-530 p. 20, (La.App. 3 Cir. 4/1/20), 297 So.3d 877, 891, *writ denied*, 20-978 (La.11/4/20), 303 So.3d 631.

Technology further asserts that because the liability limit is the same in the 2019 policy as it was in the 2016 policy, the 2019 policy cannot be considered a new policy but is, instead, a renewal under the statutory definition of renewal applicable to commercial liability policies.[2] But, as this court and others have held, there is another way to create a new policy in addition to changing liability limits and that is "through completion of an application on the required form**."** *Guillory,* 117 So.3d at 323.

Attached to Technology's cross-motion for summary judgment is another affidavit by Glenda Weishuhn Norris (Norris) again identifying her as a co-owner and "Office Manager of Kay Radio" whose job responsibilities include "applying

---

[2] "Renewal" or "to renew" means the issuance of or the offer to issue by the insurer a policy succeeding a policy previously issued and delivered by the same insurer or an insurer within the same group of insurers, or the issuance of a certificate or notice extending the term of an existing policy for a specified period beyond its expiration date.

La.R.S. 22:1267(B)(5).

for and purchasing insurance" for Kay Radio. She again attests that her brother is a co-owner who also has responsibility to apply for and purchase insurance for the company and to sign applications for insurance and documents for the purchase of insurance. The Affidavit in pertinent part states (bold emphasis added):

> Attached to this Affidavit is the **Commercial Insurance Proposal** that was presented by Brown & Brown of Louisiana, L.L.C. to Kay Radio & Electronic Services, L.L.C. on June 14, 2019, which is made a part of this affidavit (attached as Exhibit 4, as if copied herein in extenso).
>
> . . . .
>
> Kay Radio & Electronic Services, L.L.C. met with its insurance agency, Brown & Brown of Louisiana, L.L.C., **to review and discuss** Exhibit 4, and I was personally present at the meeting.
>
> . . . .
>
> Kay Radio & Electronic Services, L.L.C. reviewed Exhibit 4 in [June] 2019 and knew that "Technology Insurance Company, Inc." was the *only* commercial auto liability insurance company **being presented as the proposed commercial liability insurer** for Kay Radio & Electronic Service, L.L.C.
>
> Kay Radio & Electronic Services, L.L.C., **after considering the proposal, opted to purchase** commercial liability coverage from Technology Insurance Company, Inc.
>
> Brown & Brown of Louisiana, L.L.C. therefore sent Kay Radio & Electronic Services, L.L.C. **a Commercial Insurance Application** and the required Louisiana selection-rejection forms for uninsured motorist bodily injury coverage and uninsured property damage coverage.
>
> Attached to this Affidavit is the **Commercial Insurance Application** for the Technology Insurance Company, Inc., policy number TPP1237858 00, that was **applied for** by and on behalf of Kay Radio & Electronic Services, L.L.C.
>
> . . . .
>
> I have personal knowledge that Exhibit 6 was signed on behalf of Kay Radio & Electronic Services, L.L.C. as part of the **application process** for the Technology Insurance policy number TPP1237858 00[.]
>
> I have personal knowledge that Exhibit 3 attached to my prior Affidavit, dated March 6, 2020, was signed on behalf of Kay radio & Electronic Services, L.L.C. as part of the **application process** for the Technology Insurance Company, Inc. policy number TPP1237858 00[.]

9

Kay Radio & Electronic Services, L.L.C. reviewed the aforementioned **application** and required Louisiana uninsured motorist selection-rejection forms. . .

Exhibit 4 attached to Norris' Affidavit includes a cover page generated by Brown which includes the following language (emphasis added):

AmTrust North America, an AmTrust Financial Company, *Commercial Insurance Proposal*, Prepared for: Kay Radio & Electronic Service. Proposal Date: 6/14/2019. *Proposed Policy Period*: 7/1/2019 to 7/1/2020. Presented by Brown & Brown of Louisiana, L.L.C. . .

At the bottom of this page there also appears the following language:

*This proposal expires the sooner of (30) days after the proposal date or the proposed inception date, coverage may not be bound retroactively. Coverage and rate indications reflect <u>currently approved and executed forms and factors </u> and may be subject to change effective policy inception. Only AmTrust policy forms issued at inception provide coverage, terms and conditions. . .*

The next page in the exhibit provides the "Premium Summary" for the "proposed policy" and recites a "Proposal Date: 6/14/2019" and a "Proposed Policy Period: 7/1/2019 to 7/1/2020." This page also displays the same message at the bottom of the page as recited above from the bottom of the cover page. The next page is a Terrorism disclosure page as required by federal law. It too refers to this as "proposed coverage" and a "proposed" effective date and recites:

Your proposal includes a quote for terrorism coverage. It is required by Federal law that we offer you this coverage and disclose its cost. However, *unless you affirmatively select this coverage*, it will not appear on your policy. To learn more about terrorism coverage please contact your underwriter.

Again, this page also contains the same message at the bottom of the page cautioning the *applicant* that this *proposal* expires thirty days after the proposal date or the inception date whichever is sooner. Every successive page is identified as a part of the "proposed" policy and contains this warning at the bottom of the page.

The last page of the document contains a notice to Louisiana residents that reads (emphasis added):

> Any person who knowingly (or willfully) presents a false or fraudulent claim for payment of a loss or benefit or knowingly (or willfully) presents false information *in an application* for insurance is guilty of a crime and may be subject to fines and confinement in prison.

At the bottom of another page in this proposal there is a section for selecting or rejecting uninsured/underinsured motorist liability coverage with an indication that this section is not to be used by residents of several states including Louisiana. Attached to the proposal for coverage is a form entitled "SELECTION OR REJECTION OF UNINSURED/UNDERINSURED MOTORISTS PROPERTY DAMAGE COVERAGE (Louisiana)." This form is different from the form approved by the Louisiana Commissioner of Insurance. The form bears a signature which appears to read "Glenda Weishuhn," though the first name is not clearly legible. The name of the person signing the form is not printed and the form does not include the name of an insurer, a group name, or any insurance company logo. The form is dated "6/27/19" following the signature and is stamped "Received Jun 28 2019." As we detailed earlier, there is an additional form attached to the application. It is the officially approved State of Louisiana UM waiver form entitled "Uninsured/underinsured Motorist Bodily Injury Coverage Form." This is the form promulgated by the Louisiana Commissioner of Insurance. It is signed by Norris for Kay Radio on July 3, 2019, indicating rejection of UM coverage, but it does not bear the insurance company name, logo, or group name as is mandatory for the form to be validly executed. Clearly, as we have already said, this form does not comply with Louisiana's statutory requirements and is not a valid waiver of UM coverage by Kay Radio. The form required by the Louisiana Commissioner of Insurance must be validly completed in strict compliance with the law, otherwise UM coverage has

11

not been waived and is automatically provided at the same coverage limit as the policy's liability limits, here, one million dollars.

> [T]he commissioner's prescribed form now requires the insured to complete only five tasks in order to waive UM coverage: 1) initialing the selection or rejection of UMBI coverage; 2) if lower limits are selected, filling in the amount of coverage selected; 3) signing the name of the insured or legal representative; 4) printing the name of the insured or the legal representative; and 5) filling in the date the form was completed. The commissioner further requires that the first and second task be completed before the insured signs the UM waiver form. Additionally, it is no longer necessary to include the policy number, binder number, or application number on the form. *However, the insurance company's name, group name, or logo must be placed in the lower box located in the bottom right-hand corner of the form.*

*Barras*, 297 So.3d at 888 (emphasis added).

Norris' Affidavit attests repeatedly to the fact that the 2019 policy was obtained by an *application* for insurance submitted by Kay Radio to Technology through its agent Brown after Kay Radio duly considered the insurance *proposal* submitted by Technology. We cannot glean from this record what, if any, other insurance coverage was considered by Brown before it submitted the Technology proposal to Kay Radio. It appears the proposal for coverage was submitted at the request of Brown for its client, Kay Radio, but in this summary proceeding it is not possible to make such a factual determination. Nothing in Norris' attestation of facts in any way indicates that the 2019 policy ultimately chosen by Kay Radio was a renewal of the 2016 and/or successive policies. In fact, all Norris' representations in the affidavit indicate this was a new *application* for insurance sent to Kay Radio by Brown once Kay Radio was satisfied with the "proposal" for coverage obtained from Technology by the insured's agent. We further note that all references to costs in the insurance documents submitted as exhibits in support of Technology's motion have been blacked out. This renders it impossible for this court or the trial court to complete the factual picture when attempting to decide the factual question of

12

whether the 2019 policy is a new policy or a renewal of an existing policy. For example, if the figures were not blacked out this court might be able to determine the basis for and/or the extent of negotiations over price for the 2019 policy compared to the previous policies. Such information could shed light on the factual question of whether this was a new policy or a renewal. This further illustrates why the issue of new policy versus renewal is not determinable on summary judgment. But, as this court recently held in *Baack v. McIntosh*, 19-657 p. 20, (La.App. 3 Cir. 7/29/20), 304 So.3d 881, 898, *writ granted*, 20-1117 (La. 11/24/20), 304 So.3d 857 (emphasis added), "if [an insurance company] requires its insured to execute a new UM selection form at each policy renewal, contrary to La.R.S. 22:1295(1)(a)(ii), **it bears the consequences of the form being completed [ ] in accordance with Bulletin 08-02.**" Thus, under *Baack*, even if the 2019 policy is found to be a renewal there would be no valid waiver of UM coverage where Kay Radio was required to execute the form and return it to Technology, as the facts here indicate it did, because the form fails to list the name, logo, or group name of the insurer. The documents presented at summary judgment show that AmTrust and its affiliate Technology required Kay Radio to execute a new UM selection form in 2017, 2018, and in 2019. The form was sent each year and was in fact signed by Kay Radio's representative and returned to Technology who apparently date-stamped receipt of the form. None of these forms comply with Louisiana's requirements for a valid UM waiver because the insurance company's name, logo, or group name do not appear anywhere on the form. As this court held in *Baack*, when Technology required its insured to sign a new form each time it "renewed," or submitted a new application, then Technology was responsible for making sure the form was properly executed especially by making sure its name, logo, or group name appeared on the form as mandated by our insurance law.

13

**The insurer, not the insured, has the responsibility of assuring that the form is completed properly, and Coregis did not fulfill that responsibility in this case.**

Clearly, based on a plain reading of Bulletin No. 08-02 and the revised UM selection form, Zurich should have known that Ms. Rockwell's failure to select one of the two remaining UM coverage options would result in JBS selecting UM coverage at the same limits as its $5,000,000.00 bodily injury liability limits. The bulletin, with the revised UM selection form, was issued on August 29, 2008. Furthermore, an insured is not required to submit a new UM selection form in order to renew an auto policy. Both La.R.S. 22:1295(1)(a)(ii) and the jurisprudence are clear on this point. *See Rashall*, 982 So.2d 301. *However, Zurich clearly required JBS to submit a new UM selection form every year when it renewed its policy.*

The record establishes that JBS renewed Policy Number 9305603 twelve times between September 19, 2002 and June 1, 2014. The record also contains the 2002, 2011, 2012, 2013, and 2014 UM selection forms associated with the policy. Mr. Margis described the 2011 UM selection form as "it's kind of -- this is a standard form that would go out annually." **Thus, if Zurich requires its' insured to execute a new UM selection form at each policy renewal, contrary to La.R.S. 22:1295(1)(a)(ii), it bears the consequences of the form being completed, as it was in this matter, in accordance with Bulletin 08-02.**

Furthermore, if Zurich knew that JBS intended to reject UM coverage in 2012, 2013, and 2014, as indicated by Mr. Margis, nothing prevented it from sending the selection forms back to Ms. Rockwell with instructions that she select the option rejecting UM coverage. *Gray*, 977 So.2d 839. In *Morrison v. USAA Casualty Insurance Co.*, 12-2334, p. 2 (La. 1/11/12), 106 So.3d 95, 95-96, the supreme court discussed just this scenario:

> In the instant case, it is undisputed the insured's representative attempted to complete the required tasks to reject UM coverage, but mistakenly failed to initial the line rejecting UM coverage at the time he returned the form to the insurer. Consistent with our suggestion in *Gray* [*v. American National Property & Casualty Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839], the insurer returned the incomplete form to the insured's representative. The insured's representative then initialed the line rejecting UM coverage and returned the form to the insurer, thereby confirming an acceptance of, and agreement with, all of the information contained on the form. Although the exact date of the initialing is unclear, the evidence presented by relator establishes it occurred prior to the subject accident. Therefore, the rejection of UM coverage is valid.

Zurich failed to comply with this suggestion. Instead, Zurich required its insured to submit new UM selection forms at each policy renewal, which were on forms prescribed by the commissioner of insurance. Thus, these UM selection forms are valid **and, as signed documents, they have legal consequences**. *Draayer v. Allen*, 15-1150 (La.App. 1 Cir. 4/15/16), 195 So.3d 78; *see also* Judge Pettigrew's dissent in *Hughes v. Zurich Am. Ins. Co.*, 13-2167 (La.App. 1 Cir. 8/20/14), 153 So.3d 477, *writ denied*, 14-2220 (La. 1/915), 157 So.3d 1107. As we noted in *Alexander v. Estate of McNeal*, 10-66, p. 5 (La.App. 3 Cir. 6/30/10), 44 So.3d 338, 341, *writ denied*, 10-1807 (La. 10/29/10), 48 So.3d 1093:

> **The insurer cannot pick and choose which one of the rejection forms to enforce and required Mr. Dupar to sign for both.** ***There are legal consequences flowing from signed documents; and certainly Republic, as the drafter and presenter of the July 31, 2007 waiver form, should be held to those consequences.***

> Moreover, the only way to find these forms invalid is to rely on JBS's intent, which *Duncan* specifically held was irrelevant in UM coverage determinations. Finally, we note the well-settled rule "that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Aguillard v. Auction Mgmt. Corp.*, 04-2804, 04-2857, p. 22 (La. 6/29/05), 908 So.2d 1, 17. Here, JBS is bound by the UM selection form, as completed by its representative, and Zurich, as insurer, cannot avoid its obligations as established by the signed UM selection form.

*Baack*, 304 So.3d at 897-98 (emphasis added).

In the present case we find the only valid UM waiver form was the form attached to the 2016 policy. All subsequent forms sent by the insurer, signed by the insured, and returned to the insurer do not comport with Louisiana's statutory requirements for a valid waiver of UM coverage.

For the reasons stated, we find the trial court erred in granting Technology's motion for summary judgment, and we reverse that ruling. For the same reasons, we additionally find the trial court legally erred in denying Hart's motion for summary judgment. Accordingly, we grant Hart's motion for summary judgment and find there is UM coverage under the 2019 policy issued by Technology to Kay

15

Radio in the amount of one million dollars.  The case is remanded for further proceedings.  All costs of this appeal are assessed against Technology.

**REVERSED AND REMANDED.**